W. G. Blaisdell v. Commissioner.
W. G. Blaisdell v. Commissioner
Docket No. 6766.
United States Tax Court
1946 Tax Ct. Memo LEXIS 19; 5 T.C.M. (CCH) 1076; T.C.M. (RIA) 46288; December 9, 1946
*19 R. J. Cleary, Esq., Farmers Bank Bldg., Pittsburgh, Pa., and G. Dixon Shrum, Esq., Law & Finance Bldg., Pittsburgh, Pa., for the petitioner. Karl W. Windhorst, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined deficiencies in petitioner's income taxes as follows: 1938
$102.82
1939
507.64
1940
808.43
1941
5,684.68
The sole issue is whether earnings and profits of the Zippo Manufacturing Company (a partnership), reported as distributable to petitioner's wife, are taxable to the petitioner "as the real owner of said partnership interests". Findings of Fact The petitioner is an individual who resided at Bradford, Pennsylvania, during the taxable years and is now a resident of South Norwalk, Connecticut. He filed the returns in question with the collector of internal revenue for the 23rd district of Pennsylvania. The petitioner and his brother, George G. Blaisdell, developed and patented a cigarette and cigar lighter prior to 1934. In January of that year they and two other persons entered into an oral agreement of partnership to engage in the business of manufacturing and selling "Zippo" *20 lighters. The parties thereto agreed to share earnings and profits in proportion to their respective capital contributions. On June 25, 1934, they filed a certificate with the Secretary of the Commonwealth of Pennsylvania for the purpose of doing business at Bradford, Pennsylvania, under the assumed or fictitious name of the Zippo Manufacturing Company. The original partners and their capital contributions were - George G. Blaisdell
$2,988.15
(3/8)
Petitioner
996.05
(1/8)
George B. Morris
2,988.15
(3/8)
Frank W. Calkins
996.05
(1/8)
Total
$7,968.40
During the first year of operation the Zippo Company had gross sales of $27,795.44 and a loss of $93.62. The petitioner and his brother had previously formed another partnership, under the trade name of the Blaisdell Oil Company, which was engaged in the production of oil at Bradford. The petitioner owned a 7/16 interest and his brother owned a 9/16 interest in this partnership. During 1935 the Oil Company owed about $27,000 on a past due mortgage debt and in October of that year general creditors obtained judgments of more than $75,000 against the Oil Company and its partners. The petitioner also had *21 personal creditors. The petitioner and his brother both desired to save their respective interests in the Zippo Company from the creditors of the Oil Company. The petitioner wanted to keep his interest within his family. After discussion with his wife and his brother, the petitioner executed an instrument termed "bill of sale" on September 9, 1935, wherein he purported to "grant and convey * * * all of his [1/8] interest in the Zippo Manufacturing Company" unto his wife, Susie Rae, for a stated consideration of one dollar. Neither Morris nor Calkins made any objection. By similar instrument dated October 1, 1935, the petitioner's brother purported to convey all of his 3/8 interest in the Zippo Company to his wife, Miriam. The petitioner's brother discussed his transaction with Morris and the petitioner, both of whom consented to such transfer. Representatives of the Oil Company creditors were informed of both transactions. They made no objection to such transfers because they believed that the Oil Company could pay its creditors and that the Zippo Company had very little value. F. W. Calkins, one of the original partners, had died in September, 1935, and his interest in the Zippo *22 Company was purchased injanuary, 1936, by George Blaisdell, as agent for Homer Barcroft, who was George's father-in-law. The amount paid by Barcroft for this interest was equal to its then book value of $1,089.81. G. B. Morris informed the Zippo Company by letter that he had disposed of his interest in the company to his wife, Bertha, part in January and the balance in September, 1935. The entire Morris interest was acquired in three installments during 1936 by George Blaisdell, as agent for the Zippo Company, for a total consideration of $5,000. The interests then standing in the names of Barcroft, the petitioner's wife and his brother's wife were proportionately increased by this transaction. In the meantime, on January 24, 1936, the petitioner, his brother, Morris and Calkins' administrator had filed a certificate with the Secretary of the Commonwealth of Pennsylvania which stated that they were "no longer connected with or interested in" the business of the Zippo Company. Concurrently the wives of the petitioner and his brother, Morris' wife and Barcroft filed a new certificate for the purpose of doing business in Pennsylvania under the original trade name wherein it was stated *23 that they were "the persons owing or interested in said business". George Blaisdell, the petitioner's brother, was at all times the active manager of the Zippo Company. He devoted most of his time to that business. After the purported transfer of his interest to his wife, he was paid a salary amounting to $3,845.63 in 1936, and $3,080.54 in 1937. He continued to determine the policies of the Zippo Company. including the determination of the amounts of his salary. He and one employee were authorized by power of attorney signed on August 4, 1936, by the petitioner's wife, his own wife and Barcroft, to draw checks on the Zippo Company bank account and to execute promissory notes in their names. On February 1, 1936, the petitioner and his brother entered into a written agreement with trustees for the creditors of the Oil Company hereinbefore mentioned. The agreement recited that the petitioner and his brother were borrowing $60,000, to be secured by a first mortgage on the oil properties and to be paid out of the daily runs of oil. The agreement provided that out of the proceeds of the loan the trustees were to pay $27,000 due on the original mortgage and 10 per cent of the indebtedness *24 due other creditors, whose liens were to be subordinated to the new mortgage. The balance of the loan was to be expended for development purposes. All of the oil produced under the trusteeship was to be run to the credit of the new mortgagee and the other creditors pursuant to schedules specified in the agreement. The petitioner and his brother were to be $300allowed a month each but the Oil Company was managed by the petitioner. His brother supervised the office work, books and payroll of the Oil Company on a part-time basis. Pursuant to the agreement with the trustees the petitioner and his brother executed a judgment note in February, 1936, for the total indebtedness due all creditors other than the mortgagee. After applying the agreed 10 per cent payment to the note a judgment for $60,249.40 was entered on the note in lieu of the judgments already obtained by those creditors, which were satisfied of record. The operation of the Oil Company under the trusteeship proved to be successful and the judgment thus obtained on the note to the trustees was satisfied on April 30, 1937. The mortgage given by the petitioner and his brother in 1936 was satisfied on January 1, 1941. Prior to *25 the latter date the petitioner was also indebted to personal creditors. On January 1, 1938, the petitioner's brother purported to purchase the interest standing in his wife's name by giving her a demand note for $17,848.71. Thereafter he gave his wife checks aggregating $22,500 which were credited in part to the note and used in part for household expenses. The petitioner's brother, the petitioner's wife and Barcroft filed a new certificate on November 9, 1938, for the purpose of doing business in Pennsylvania under the original trade name. The petitioner's brother was paid a salary of $5,580.05 in 1938, $7,525.02 in 1939, $8,831.00 in 1940, and $25,000.82 in 1941, the amounts of which were determined solely by him. On September 11, 1938, the Zippo Company acquired two parcels of real estate located at Bradford. The real estate was conveyed to the petitioner's wife, his brother and Barcroft, as "co-partners trading and doing business as Zippo Manufacturing Company". On March 2, 1939, they executed and delivered a bond and mortgage in the principal sum of $12,000, which was secured by the property acquired in 1938. The assets of the Zippo Company during the years 1934 to 1941, *26 inclusive, consisted generally of cash, accounts and notes receivable, inventories, real estate and buildings, office and shop equipment, dies and tools, patents and trade marks, and securities. On December 31 of each of the years 1934 to 1941, inclusive, the Zippo Company had cash on hand in the amounts of $416.25, $773.17, $4,377.08, $2,491.34, $6,773.34, $13,458.92, $12,874.40 and $47,868.05, respectively. The total assets on said dates were $12,676.32, $20,304.24, $30,494.17, $43,720.60, $78,345.05, $101,201.86, $125,063.84 and $202,235, respectively. The net worth on said dates was $7,874.78, $14,291.99, $17,914.51, $29,747.88, $34,816.23, $62,102.21, $105,635.82 and $186,726.35, respectively. From 1934 to 1941, inclusive, the monthly average of employees increased from 10 to 62 in number. The net earnings and profits were as follows: 1934
$ (93.62)
1935
6,417.21
1936
8,622.53
1937
17,171.05
1938
18,552.43
1939
40,301.90
1940
67,446.61
1941
175,526.85
The petitioner was active in the research and development of the lighters manufactured by the Zippo Company. During and after 1935, however, most of his time was devoted to the business of the Oil *27 Company, although he kept informed on the operations of the Zippo Company. He was advised on matters of Zippo Company policy by his brother and he assisted in minor operations whenever possible. The character of the services rendered by petitioner to the Zippo Company were substantially the same before and after he purported to transfer his interest to his wife. He never received any compensation for services rendered to the Zippo Company. He never signed any checks on any bank account of the Zippo Company. The petitioner's wife kept house for him and their two sons, one of whom attended college during part of the period in question. She helped with the assembly and decoration of the Zippo lighters in her home during rush periods from 1934 until late in 1941. She was paid 10" a lighter, which she turned over to a friend who helped her. She visited the Zippo Company shop but never worked there. She had informal conferences with petitioner and his brother, but she never had any conferences with any other persons connected with the Zippo Company. She displayed an interest in the operations and success of the Zippo Company at all times. Her separate property consisted of a small interest *28 in an oil lease. On January 1, 1941, the petitioner's wife purported to assign to him one-half of the interest in the Zippo Company which then stood in her name. The stated consideration was $10,563.58, evidenced by a note given by the petitioner to his wife, which was payable on demand without interest. This sum was determined on the basis of book value, which did not take into consideration the good will and prospective earnings and profits of the Zippo Company. No actual cash payments were made by the petitioner to his wife with respect to the note. They kept a joint bank account and used common deposit and check books without separating their respective funds. The petitioner's wife credited the note with payments at various times when deposits in the joint account were made by the petitioner. The note was considered fully paid in this manner by both parties, although it was endorsed with written credits totaling only $9,000. Subsequently, on November 4, 1942, the petitioner, his wife, his brother and Barcroft filed a new certificate for the purpose of doing business in Pennsylvania under the original trade name. During and after November, 1941, the petitioner was employed by *29 the Government in the Office of Production Management. The books and records of the Zippo Company do not show any transfers of the original partnership interests. The original capital contributions were recorded in an investment account which carried only the names of the petitioner, his brother, Morris and Calkins. Profits and withdrawals were carried in a general surplus account. The withdrawals are identified by initials. The Zippo Company made no distribution of profits during its first three years of operation. Thereafter, withdrawals were charged at irregular intervals. The petitioner's wife was charged with total withdrawals of $1,088.96 in 1937, $1,052.70 in 1938, $1,325.90 in 1939, and $3,500 in 1940. The petitioner's initials appear after three withdrawals of about $20 each. On three occasions withdrawals of $200 each were charged to the petitioner's wife but were paid by checks drawn to the petitioner's order. In the first four months of 1941 withdrawals of $3,900 were charged to the petitioner's wife; during the remaining months of 1941 withdrawals of $9,600 were charged to the petitioner. At least $12,812.67 of the total withdrawals by the petitioner and his wife for *30 1941 were paid by checks which were drawn to the order of the petitioner. The partnership returns filed by the Zippo Company showed the following shares of income as being distributable to the petitioner's wife; $802.15 in 1935, $1,724.51 in 1936, and $3,434.21 in 1937. She reported such amounts, as well as the amounts shown below, as her income. The shares of income for the taxable years were reported as follows: 1938
1939
1940
1941
George G. Blaisdell
$13,363.45
$27,191.16
$44,000.37
$115,276.45
Petitioner's wife
2,594.49
6,555.38
11,723.12
15,062.60
Homer G. Barcroft
2,594.49
6,555.36
11,723.12
30,125.20
Petitioner
15,062.60
Total
$18,552.43
$40,301.90
$67,446.61
$175,526.85
With minor exceptions, all withdrawals charged by the Zippo Company to the petitioner's wife were deposited in the joint bank account which she maintained with the petitioner. Checks drawn to her order were endorsed for deposit either by her, by the petitioner, or by his brother. Both the petitioner and his wife had authority to withdraw the entire balance of their joint account at any time. His wife managed the account, however, and used the funds *31 as she saw fit for family purposes, living and education expenses. The petitioner made suggestions from time to time concerning the reduction of bills incurred for such purposes. The petitioner's wife was not a partner for income tax purposes in the Zippo Manufacturing Company. Opinion LEMIRE, Judge: The question for decision is whether the petitioner's wife may be recognized for federal income tax purposes as a partner in the Zippo Manufacturing Company. The respondent explained the assertion of deficiencies in petitioner's income taxes as follows: It is held that the earnings and profits of the Zippo Manufacturing Company (a partnership), reported as distributable to your wife, Susie Rae Blaisdell, * * * [for each of the taxable years 1938, 1939, 1940, and 1941], are, for Federal income tax purposes, taxable to you as the real owner of said partnership interests. The petitioner contends that his wife became a partner in his place by virtue of a gift of his entire interest in the Zippo Company which he made to her in 1935 with the consent of his former partners. The respondent's contention is that the petitioner never relinquished his partnership interest. The petitioner *32 asserts that his sole purpose in executing the "bill of sale" to his wife in 1935 was to save his partnership interest in the Zippo Company from his creditors and to keep that interest for his family. His brother had the same motives in executing a similar instrument in favor of his wife. The brothers were then heavily indebted to the creditors of another business in which they were partners. The petitioner also had personal obligations. After the business creditors had been satisfied the petitioner's brother secured a retansfer of his partnership interest from his wife in 1938. The petitioner did not take similar action at that time because his personal creditors were still unpaid. The following questions addressed to, and the answers given by, the petitioner's wife provide the key to the subsequent transaction in 1941 as well as the original transaction in 1935 between the petitioner and his wife: Q. Prior to the sale by you in January, 1941, of one-half of your interest to your husband, did you and he have any discussions respecting his acquiring an interest, that is before - between 1935 and 1941? A. Yes, we did. We always felt that everything we owned we would like to own *33 jointly, but because of personal indebtedness we had aside from the Blaisdell Oil Company indebtedness we felt it would be better not to make that sale until we were running, our personal affairs were running a little more smoothly. Therefore we - while we discussed the matter, we began to feel we could safely do it. Q. Now, were there any discussions between you and your husband in 1938? A. Yes. Q. Respecting that? A. Yes. Q. Can you give us the tenor of those discussions? A. Yes. Again, it was reflected back to our personal indebtedness as we always felt we would like to own things jointly. We were anxious to be back on that status, but at that time, if my husband had really coaxed me, I would not have sold my interest. Q. You would not have sold it? A. No. Q. Why not? A. Well, we had outstanding debts that we had incurred through living expenses, children's education and all that sort of thing that I hoped ultimately we could take care of. Our own - our only chance was if we could roll the Zippo up fast enough, I didn't want any creditors to be able to attach anything Mr. Blaisdell might have which, if he had an interest in Zippo he might have been able to at *34 that time. Q. Why did you make disposition of one of your interests in 1941? A. By that time our personal situation had clarified; I began to see my way out of the woods. We were beginning to be able to pay our own personal indebtedness. The oil company I forget whether it was entirely out of debt, but you could see the handwriting on the wall. At that time I thought it was safe for myself and my children and family to go back to our original partnership which I always considered our marriage to be. That is we each owned things 50-50. The operation of the oil company under a trusteeship for its creditors had been so successful that those creditors were paid in 1937. The mortgage which was secured by the oil company properties was satisfied on January 1, 1941. On that date the petitioner's wife purported to retransfer to him one-half of the partnership interest then standing in her name. The petitioner and his brother had originally developed the lighter which was later manufactured by the Zippo Company. The petitioner's interest in the partnership at 1935 therefore included a substantial expectation of reward for past services. The petitioner continued to render services to *35 the Zippo Company after he purported to transfer his interest in that company to his wife. Moreover, in 1935 the petitioner and his brother arranged that the petitioner would devote most of his time to another business (in which they were exclusive partners) and that the brother would devote most of his time to the business of the Zippo Company (in which they were partners with two other persons who rendered no services). Thus, while the petitioner's brother managed the Zippo Company partnership, his full-time services depended upon the mutual agreement for the division of labor between the brothers. The success of the Zippo Company was due to the invention of the product which it manufactured, the capital contributed by the original partners, and its excellent management by the petitioner's brother. The petitioner contributed in a very real sense to each element of that success. The petitioner's wife made no such contribution. In our opinion, based on the entire record, the 1935 transaction was a limited arrangement between the petitioner and his wife. It was never intended as a real gift. It was intended to be contingent upon the petitioner's financial condition. The record of *36 the petitioner's services, the circumstances which dictated the 1941 transaction, and the facts relating to the withdrawals, deposits and uses of the earnings of the Zippo Company by the petitioner and his wife during the taxable years are consistent with the view that the 1935 transaction was without substance. We realize that in consequence of that transaction the petitioner's wife was accepted by the other partners, that she executed a power of attorney, took title to real estate and assumed liability on a mortgage bond. But the present issue cannot be decided merely by looking at these isolated steps in the whole transaction. The steps taken by petitioner's wife are consistent with her role as a temporary title holder. The petitioner remained the real owner for all substantial and practical purposes. In addition to that basic, if not determinative, fact, other facts in the present case fit the criteria set down in , and . The petitioner's wife did not share in the management and control of the business, she contributed no vital additional services, and the petitioner purported to *37 have given her a partnership interest. In short, although the petitioner did not purport to form a partnership with his wife, she was not the source of the income producing factors of vital services and capital upon which the taxation of partnership income depends. We hold that the petitioner has not shown that his wife was really and truly a member of the Zippo Company partnership. Decision will be entered for the respondent.